UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    Case No. 17-CR-175

JOSEPH DAVIS, JR.,

        Defendant.

## PLEA AGREEMENT

1.    The United States of America, by its attorneys, Richard G. Frohling, Acting United States Attorney for the Eastern District of Wisconsin, and Gail J. Hoffman and Elizabeth M. Monfils, Assistant United States Attorneys, and the defendant, Joseph Davis, Jr., individually and by attorney Edward J. Hunt, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.    The defendant has been charged in four counts of a 27-count superseding indictment, which alleges violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), 841(b)(1)(C), and 846; and Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 2.

3.    The defendant has read and fully understands the charges contained in the superseding indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT ONE

### THE GRAND JURY CHARGES THAT:

1. *Beginning by at least August 2015, and continuing until on or about September 27, 2017, in the State and Eastern District of Wisconsin and elsewhere,*

**TORRENCE HARRIS, SR., a/k/a "T-Mack,"
TERRANCE HAMLIN, a/k/a "T-Bone,"
ROYEL PAGE, and
JOSEPH DAVIS, JR.,**

*knowingly and intentionally conspired with each other, and with persons known and unknown to the grand jury, to possess with the intent to distribute and to distribute a mixture and substance containing a detectable amount of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).*

2. *The amount involved in the conspiracy attributable to each defendant as a result of his own conduct, and the conduct of other co-conspirators reasonably foreseeable to him, is 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and fentanyl and cocaine, both Schedule II controlled substances.*

*All in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B), and Title 18, United States Code, Section 2.*

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a

2

Case 2:17-cr-00175-PP   Filed 02/22/21   Page 2 of 14   Document 499

reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

### *Background and Court-Authorized Interceptions*

*In August 2015, law enforcement authorities initiated an investigation involving a drug trafficking organization (DTO) spearheaded by Torrence Harris. In part, the investigation revealed that Torrence Harris obtained controlled substances such as heroin and cocaine, and distributed these substances to other drug traffickers. Ultimately, beginning on March 30, 2017, and continuing until on or about September 27, 2017, court-authorized monitoring of multiple cellular telephones used by DTO members, including Torrence Harris and Terrance Hamlin, was granted.*

*In sum, the investigation revealed that Torrence Harris obtained controlled substances, and, in turn, distributed controlled substances to other drug traffickers including Terrance HAMLIN, and numerous others. HAMLIN then distributed cocaine and heroin to Joseph DAVIS, Jr. and others.*

### *Joseph DAVIS, Jr.*

*The investigation, including intercepted calls, revealed that Joseph DAVIS, Jr. called Terrance HAMLIN and requested distribution quantities of narcotics. HAMLIN then directed J. DAVIS, Jr. to a meeting location. Once J. DAVIS, Jr. and HAMLIN arrived at that pre-determined location, HAMLIN supplied J. DAVIS, Jr. with narcotics. Between April 26, 2017 and June 16, 2017, approximately 69 intercepted calls and/or text messages between HAMLIN and J. DAVIS, Jr. were deemed criminal and pertinent in nature.*

*On April 26, 2017, J. DAVIS, Jr. called HAMLIN, and said that he had "four zips" of "some dog food on deck." J. DAVIS, Jr. later clarified that the "dog food" was "boy." HAMLIN told J. DAVIS, Jr. that they should meet in person. Case agents know that "zip" is coded language used to refer to an ounce, and that "boy" is coded language used to refer to heroin. Therefore, case agents believe that J. DAVIS, Jr. had four ounces of heroin to sell to HAMLIN.*

*As another example, on June 9, 2017, HAMLIN and DAVIS, Jr. spoke via telephone. J. DAVIS, Jr. wanted to obtain narcotics from HAMLIN, and asked what he could get for "about one fifty." HAMLIN said he would call J. DAVIS, Jr. right back. A short time later HAMLIN called J. DAVIS, Jr. and asked if J. DAVIS, Jr. was available to meet. HAMLIN expressed to J. DAVIS, Jr. that if J. DAVIS, Jr. was able to meet immediately, HAMLIN could give J. DAVIS, Jr. a discounted price on the requested narcotics. Otherwise HAMLIN would sell the narcotics to another customer. J. DAVIS, Jr. acknowledged and advised he would meet with HAMLIN right away.*

*Also, on June 15, 2017, J. DAVIS, Jr. called HAMLIN to obtain narcotics. HAMLIN asked what J. DAVIS, Jr. wanted and J. DAVIS, Jr. replied, "250." J. DAVIS, Jr. advised he was ready whenever HAMLIN was available. HAMLIN said he would call J. DAVIS, Jr. back "in a second," but HAMLIN never did. The following day, on June 16, 2017, J. DAVIS, Jr. called HAMLIN again.*

3

*HAMLIN apologized and said he forgot to call J. DAVIS, Jr. back the previous day. HAMLIN instructed J. DAVIS, Jr. to meet near N. 27th Street and W. Ruby Avenue, Milwaukee, Wisconsin, a location where case agents have observed HAMLIN conduct numerous narcotics transactions. HAMLIN asked, "What we doing? So I know." J. DAVIS, Jr. reiterated, "Two fifty. Two fifty." HAMLIN acknowledged and instructed J. DAVIS, Jr. to "Come on." Case agents believe that J. DAVIS, Jr. purchased cocaine from HAMLIN.*

*Case agents conducted surveillance and observed J. DAVIS, Jr. arrive at N. 27th Street and W. Ruby Avenue in a Mercury Milan displaying Wisconsin Registration 466-XVJ registered to, and being driven by, L.L.L. (B/F, xx-xx-83). J. DAVIS, Jr. and HAMLIN met outside the passenger side of HAMLIN's blue Chrysler Town and Country minivan. After their transaction, J. DAVIS, JR. entered the Mercury. J. DAVIS, Jr. and L.L.L. left the area.*

*On September 27, 2017, J. DAVIS Jr.'s residence was searched. A firearm, more specifically an EAA HWM Windicator Series .357 Magnum Revolver, bearing serial number 1051357, and small amount of cocaine were recovered. DAVIS is a convicted felon. On this date, after being advised of his Miranda rights, which J. DAVIS, Jr. stated he understood and wished to waive, DAVIS stated that he purchased seven grams of cocaine from HAMLIN on about 15 occasions. DAVIS then added a cutting agent to the cocaine and sold it to his customers.*

*Case agents know that the above-referenced conversations reflect that J. DAVIS, Jr. obtained controlled substances from HARRIS and subsequently from HAMLIN for distribution purposes.*

*In addition, case agents are aware through this investigation that J. DAVIS, Jr. introduced HAMLIN to another source for heroin. HAMLIN purchased approximately nine ounces of heroin from this source over the span of approximately five different occasions. J. DAVIS, Jr. would then receive a financial gain for introducing heroin customers to his source.*

*Based upon their training, experience, and familiarity with the investigation, case agents believe that J. DAVIS, Jr. is responsible for the distribution of at least at least 100 grams but less than 400 grams of a mixture and substance containing heroin and at least 100 grams but less than 200 grams of a mixture and substance containing cocaine.*

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

### PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: Count One, 40 years and a $5,000,000 fine. The Count also carries a mandatory minimum of five years of

4

imprisonment, a mandatory special assessment of $100, and at least five years of supervised release.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney, including any possibility that the defendant may qualify as a career offender under the sentencing guidelines.

## DISMISSAL OF REMAINING COUNTS

8. The government agrees to move to dismiss the remaining counts of the superseding indictment at the time of sentencing.

## PROOF OF DRUG WEIGHT FOR STATUTORY MAXIMUM PENALTY

9. The parties understand and agree that for the penalties in 21 U.S.C. §§ 841(b)(1)(B) to apply, as provided in paragraph 6 above, the government must prove beyond a reasonable doubt that the offense to which the defendant is pleading guilty involved at least 100 of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance. The defendant agrees that the government possesses sufficient, admissible evidence to meet this burden.

## ELEMENTS

10. The parties understand and agree that in order to sustain the charge of 21, U.S.C. §§ 841(a)(1) and 846, conspiracy to possess with intent to distribute or to distribute a controlled substance as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

First, the conspiracy, as alleged in the indictment, existed; and

Second, the defendant knowingly and intentionally joined the conspiracy with the intention to further the conspiracy.

## SENTENCING PROVISIONS

11. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days

5

before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The defendant acknowledges and agrees that his attorney has discussed the potentially applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

15. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating

6

the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

17. The parties agree to recommend to the sentencing court that the relevant conduct attributable to the defendant is at least 100 grams but less than 400 grams of a mixture and substance containing heroin, a Schedule I controlled substance, and at least 100 grams but less than 200 grams of cocaine, a Schedule II controlled substance.

## Base Offense Level

18. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count One, using the drug conversion table and converting all controlled substances to marijuana, is 24 under Sentencing Guidelines Manual § 2D1.1(c)(8).

## Weapons

19. The government will recommend to the sentencing court that a 2-level increase under Sentencing Guidelines Manual § 2D1.1(b)(1) is applicable to the offense level for the offense charged in Count One because the offense involved a firearm. The defendant does not join in this recommendation.

## Acceptance of Responsibility

20. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government may make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

7

## Sentencing Recommendations

21. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

22. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

23. The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the court.

## Court's Determinations at Sentencing

24. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

8

## FINANCIAL MATTERS

26. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

27. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

### Fine

28. The parties agree to recommend to the sentencing court that no fine be imposed against the defendant.

### Special Assessment

29. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

9

## DEFENDANT'S WAIVER OF RIGHTS

30. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights that include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

   e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

31. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights.

The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

32. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

33. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

34. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

35. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

36. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

37. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

38. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

39. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed

against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

40. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

13

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 02/22/21

JOSEPH DAVIS, JR.
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 02/22/2021

EDWARD J. HUNT
Attorney for Defendant

For the United States of America:

Date: 2/22/21

MATTHEW D. KRUEGER
United States Attorney

Date: 2/22/21

GAIL J. HOFFMAN
ELIZABETH M. MONFILS
Assistant United States Attorneys

14